## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| RICK STOWELL, | : | |
| | : | |
| Plaintiff, | : | Civil No. 17-06633 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BLACK HORSE PIKE REGIONAL SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**KUGLER**, United States District Judge:

This case arises from Defendant Black Horse Pike Regional School District's (hereinafter "the District") decision to non-renew Plaintiff Rick Stowell's employment contract. Plaintiff's suit alleges that the non-renewal was related to his disability, while the District argues that it was based on Plaintiff's ineffectiveness as a teacher. The District now moves for summary judgment (Doc. 19) on all of Plaintiff's claims, and moves to strike Plaintiff's demand for punitive damages. For the reasons expressed herein, the Court hereby **GRANTS IN PART** the District's motion for summary judgment, solely as to Counts IV and V (failure to accommodate and retaliation under the New Jersey Law Against Discrimination). The remainder of the District's motion is **DENIED**.

## I.      BACKGROUND

From 2013 to 2017, Plaintiff worked as an English Teacher at Timber Creek High School, a school within the District. (Doc. 19-4, Defendant's Statement of Material Facts ("Def. SOMF") ¶2.) At the time he was hired, Plaintiff had 23 years of teaching experience. (Doc. 20-5, Plaintiff's Statement of Material Facts ("Pl. SOMF") ¶2.) In his position at Timber Creek, he was non-tenured

and had a one-year employment contract eligible to be renewed at the end of each school year. (Pl. SOMF ¶4.) His contract was renewed each year from the 2013-14 school year through the 2016-17 school year, at the end of which Defendant chose not to renew. (Def. SOMF ¶3; Pl. SOMF ¶4.)

### *Plaintiff's Illness and Absences*

During his final school year at Timber Creek, 2016-17, Plaintiff struggled with illness. (Pl. SOMF ¶¶44–60.) In July 2016, Plaintiff had been diagnosed with and hospitalized for acute pancreatitis. (Def. SOMF ¶10.) Plaintiff had stated he was feeling better in September 2016, but his sickness rematerialized in October 2016. (*Id.* ¶12.) In October/November 2016, Plaintiff's condition prompted him to begin seeing a gastroenterologist for the constipation, cramping, pain, and general discomfort he was feeling. (Pl. SOMF ¶¶49–50.) As a result, in November 2016, "Plaintiff required five days of leave due to his medical condition." (*Id.* ¶50.) Plaintiff's condition apparently did not improve throughout the school year, and in April 2017, he required surgery. (*Id.* ¶¶56–57.) Overall, Plaintiff's illness during the 2016-17 school year resulted in 17 medical condition-related absences, more than he had taken in prior school years. (Pl. SOMF ¶60.) For reference, Plaintiff took 5.5 sick days in 2013-14, 7.5 sick days in 2014-15, and 12 sick days in 2015-16. (Def. SOMF ¶¶6–8.)

Plaintiff and Defendant present varied accounts as to whether school personnel knew of Plaintiff's illness, as well as different versions of how school personnel responded to Plaintiff's absences. Plaintiff claims that, at the beginning of the 2016-17 school year, he told Kasha Giddins, the Principal of Timber Creek ("Principal Giddins"), Marcie Geyer, the District's Supervisor of English/Language Arts ("Supervisor Geyer"), and Suzanne Nordone, his lead teacher, of his hospitalization for pancreatitis and condition. (Pl. SOMF ¶46.) He claims that he "further advised that he was continuing to seek care for his Medical Condition, and that he may need leave during

the school year for medical visits related to same." (*Id.*) Every time Plaintiff needed to be absent, he claims he would "input his need for such leave in Defendant's computer system," adding in the "notes" section that "his illness leave was due to his Medical Condition." (Pl. SOMF ¶51.) Plaintiff claims that these notes would have been "shared with Supervisor Geyer at all times." (*Id.* ¶52.) When he needed surgery in April 2017, Plaintiff states that he informed Principal Giddins. (*Id.* ¶57.)

Plaintiff claims that his requests for absences "were met with an exasperated tone," leading him to believe that the administrators thought he was a "hindrance to the school and to the District." (*Id.* ¶61.) He states that the "expressions of irritation at his requests for leave" caused him to feel guilty about taking time off. (*Id.* ¶62.)

In the District's version of events, Supervisor Geyer "was not aware of the type of illness Plaintiff had and believed it was leg pain, but also possibly stomach pain." (Def. SOMF ¶19.) Principal Giddins, while admitting knowledge of Plaintiff's pancreatitis since the beginning of the 2016-17 school year, states that Plaintiff "never mentioned that he would sometimes have to call out of work due to his condition." (*Id.* ¶21.) The District's Director of Personnel, Julie Scully, stated that she did not receive a doctor's note or request for leave, and that Plaintiff did not inform her of any medical condition. (*Id.* ¶24.)

### *Plaintiff's Evaluations and The Tenure Decision*

To evaluate its teachers, Timber Creek had supervisors and administrators conduct observations several times a year. (Def. SOMF ¶5.) Based on these observations, teachers would receive an effectiveness rating on a 4-point scale, with 1 being "ineffective" and 4 being "highly effective." (Doc. 19-19, Plaintiff's Summative Performance Report 2016-2017.) For the 2013-14

school year, Plaintiff received a 2.85 out of 4; in 2014-15 he received a 2.73; in 2015-16 he received a 3; and in 2016-17 he received a 2.44. (Def. SOMF ¶¶6–9.)

Supervisor Geyer and Principal Giddins made the ultimate decision not to renew Plaintiff's employment contract; the District states their decision was based on Plaintiff's 2016-17 year-end summative evaluation. (Def. SOMF ¶¶17–23.) On April 13, 2017, they met with Plaintiff and informed him that they were choosing not to renew his contract for the following school year. (*Id.* ¶32.)

In explaining Plaintiff's poor effectiveness rating and her decision to not recommend Plaintiff for tenure, Supervisor Geyer stated that Plaintiff's "level of student-centered instruction had not improved enough," and she observed "the need for more structured student centered activity for modeling and more consistent implementation of formative assessment." (*Id.* ¶17.) She added that she thought Plaintiff did "not involve all students" in his lessons, and that a "more student-centered environment was needed." (*Id.* ¶18.)

Principal Giddins stated that she had discussed similar concerns about Plaintiff's teaching performance with Supervisor Geyer, and that she felt it was a "difficult decision" whether to grant Plaintiff tenure (*Id.* ¶20.) She stated she felt Plaintiff had a "laissez-faire attitude towards the teaching," and that he followed the "old school standard of educational teaching" rather than being more "student-centered." (*Id.*) Both Supervisor Geyer and Principal Giddins claimed that "the decision not to grant tenure had nothing to do with Plaintiff's attendance and Plaintiff's absences were not even taken into account when [they] spoke about whether or not to recommend non-renewal." (*Id.* ¶23.)

After being notified of his non-renewal, Plaintiff received a notice on May 2, 2017 informing him that he could "request an informal appearance before the Board of Education" and

"request a statement of reasons for non-renewal." (*Id.* ¶33.) Plaintiff did not make such requests or appeal the non-renewal decision before filing his Complaint in this case. (*Id.* ¶¶34–35.) Plaintiff argues that the effectiveness rating he received was not an accurate characterization of his teaching; he alleges that the true reason his contract was not renewed and he did not receive tenure was because the District did not want to accommodate any further leave that his medical condition might require. (Doc. 20, Plaintiff's Brief in Opposition to Summary Judgment ("Pl. Opp.") at 6–7.)

Plaintiff's Complaint includes five counts: Count I, interference with leave under the Family and Medical Leave Act ("FMLA"); Count II, retaliation under the FMLA; Count III, disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"); Count IV, failure to accommodate under the NJLAD; and Count V, retaliation under the NJLAD. The District is now moving for summary judgment on all counts.

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility

determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

### A.  Plaintiff's FMLA Claims

The FMLA provides eligible employees the right to twelve weeks of leave during a twelve-month period for, among other reasons, "a serious health condition that makes the employee unable to perform the functions of" his or her position. 29 U.S.C. § 2612(a)(1); *see also Conoshenti v. Public Serv. Elec. & Gas. Co.*, 364 F.3d 135, 141 (3d Cir. 2004). Employees who take leave pursuant to the FMLA are entitled to certain protections. For example, an employer may not "interfere with, restrain, or deny [an employee's] exercise of or attempt to exercise" his or her rights under the FMLA (otherwise known as an "interference claim"). 29 U.S.C. § 2615(a)(1); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr*., 691 F.3d 294, 301 (3d Cir. 2012). Further, an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" (otherwise known as a "retaliation claim"). *Id*. at § 2615(a)(2); *see also Lichtenstein*, 691 F.3d at 301.

Here, Plaintiff is claiming both interference and retaliation. The District argues that both claims fail as a matter of law because Plaintiff has failed to present a prima facie case for either count. (Doc. 19-5, Defendant's Brief in Support of Motion for Summary Judgment ("Def. Mot.") at 15.)

### i. Interference

To prevail on an FMLA interference claim, the plaintiff must show that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017). In order to "succeed on an interference claim, the Third Circuit requires that a plaintiff demonstrate that the failure to advise him of his FMLA rights 'rendered him unable to exercise that right in a meaningful way, thereby causing injury.'" *Moore v. U.S. Foodservice, Inc.*, Civ. No. 11-2460, 2013 WL 5476405, at *6 (D.N.J. Sept. 30, 2013) (quoting *Conoshenti v. Public Svc. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir.2004)). A defendant's "[l]iability for interference is not based upon intent, but upon the act of interference alone." *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F.Supp.3d 744, 756 (W.D. Pa. 2016), aff'd sub nom. *Caplan v. L Brands/Victoria's Secret Stores*, 704 F.App'x 152 (3d Cir. 2017).

*Whether Plaintiff Gave Notice*

The parties do not dispute whether Plaintiff was an eligible employee entitled to FMLA leave; however, they disagree on whether Plaintiff gave adequate notice to the District of his intention to take FMLA leave. Employees seeking to invoke rights under the FMLA must provide adequate notice to their employer about their need to take leave. 29 U.S.C. § 2612(e)(2). Whether

the employee provided adequate notice is "construed liberally and is generally a question of fact, not law." *Callan v. City of Dover*, 65 F. Supp. 3d 387, 393 (D. Del. 2014) (citing *Lichtenstein*, 691 F.3d at 303).

In providing notice, the employee "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). The Third Circuit has noted on several occasions that the notice requirement is a liberal and flexible one, not a formalistic or stringent standard. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (stating that the statutory and regulatory text suggests a "liberal construction" be given to FMLA's notice requirement); see also *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 474 (8th Cir. 2007) ("The regulations already make it very easy for [an employee] to give notice of her intent to take leave."); *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006) ("The notice requirements of the FMLA are not onerous."). The Third Circuit has explained that "the regulations... clearly envision situations where an employee can satisfy her notice obligation without providing enough detailed information for the employer to know if FMLA actually applies." *Lichtenstein*, 691 F.3d at 303. As such, the central test "is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" *Id.* (quoting *Sarnowski*, 510 F.3d at 402).

Bearing in mind the liberal standard for notice, and considering that notice is an issue of fact, a reasonable jury could find that Plaintiff gave the District sufficient notice of his request for FMLA leave. Plaintiff first "advised his supervisors at the beginning of September of his Medical Condition, that he was previously hospitalized as a result of same, and that he would need time off in the future" for follow-up care. (Pl. Opp. at 11.) On one of Plaintiff's sick day notices, he wrote "CT Scan." (Def. Mot. at 18.) At some point during the school year, he told Supervisor Geyer that

"he may need time off to go to doctors as he was seeing a gastroenterologist." (*Id*. at 19.) Further, Principal Giddins was aware of Plaintiff's April 2017 outpatient surgery in relation to his condition. (Pl. SOMF ¶57.) Considering all of this record evidence in the light most favorable to Plaintiff, it is sufficient to raise a question of fact as to whether the District had notice of Plaintiff's desire to take leave.

<u>Whether Plaintiff was Denied Benefits</u>

"To satisfy the fifth element of [a] prima facie FMLA interference claim, [a plaintiff] must demonstrate that [the employer's] failure to explicitly notify [him] of [his] FMLA rights deprived [him] of the ability to take leave to which [he] was entitled under the FMLA." *Caplan*, 210 F.Supp.3d at 757. The District argues that this element is not met because Plaintiff was never denied the ability to take leave, and because it sufficiently notified its employees of their ability to take FMLA leave by posting information around the school and in the employee handbook. (Def. Mot. at 16.)

"The FMLA requires employers to provide employees with both general and individual notice about the FMLA." *Lupyan v. Corinthian Colleges Inc*., 761 F.3d 314, 318 (3d Cir. 2014) The purpose of this requirement is to "ensure that employers allow their employees to make informed decisions about leave." *Id*. For the general notice requirements, an employer "must post a notice of FMLA rights on its premises," and "must also include information regarding the employer's FMLA policies in a handbook or similar publication." *Id*. To meet the individualized notice requirements, once the employer is "on notice" that its employee is taking FMLA-qualifying leave, the Third Circuit requires the employer to:

> (1) within five business days notify the employee of his or her eligibility to take FMLA leave, 29 C.F.R. § 825.300(b)(1); (2) notify the employee in writing whether the leave will be designated as FMLA leave, 29 C.F.R. § 825.300(d)(1); (3) provide written notice detailing the employee's obligations under the FMLA and explaining

> any consequences for failing to meet those obligations, § 825.300(c)(1); and (4) notify the employee of the specific amount of leave that will be counted against the employee's FMLA leave entitlement, § 825.300(d)(6)

*Lupyan*, 761 F.3d at 318. An employer's failure to provide the required general or individual notice "can constitute an interference claim." *Id*.

While "the lack of adequate notice about FMLA rights may support a FMLA interference claim, the failure to adequately disclose an employee's FMLA rights is not enough." *Caplan*, 210 F.Supp.3d at 757. A plaintiff must also show he was prejudiced by this failure, which "occurs when the employer's failure to advise the plaintiff of [his] FMLA rights rendered [him] unable to exercise the right to leave in a meaningful way, thereby causing injury." *Lupyan*, 761 F.3d at 318–319.

The District argues that Plaintiff was not prejudiced, as it did inform Plaintiff of his right to take FMLA leave by posting notices "in various areas around the school informing teachers of their right to take FMLA leave," as well as in the "Timber Creek Regional High School Faculty and Staff Handbook," in the "BHPRSD Policies" and "in the Agreement between the Black Horse Pike Regional School District Board of Education and the Black Horse Pike Educational Association." (Def. Mot. at 16.) Plaintiff argues in response that these notices are insufficient to serve as individualized notice of his right to take a "leave of absence beyond his allotted sick time." (Pl. Opp. at 12.)

The posted notices in the school and in the handbook do serve to satisfy the general notice requirement. However, Plaintiff correctly argues that he did not receive the required individualized notice. Further, a reasonable jury could find that Plaintiff was prejudiced by the District's failure to provide individualized notice. Plaintiff argues that he was prejudiced because he did not know he could use FMLA leave, and was thus "constrained in that he could only utilize leave in

accordance with sick days," and was "forced to come to work while suffering from pain." (Pl. Opp. at 14.) Plaintiff states that he could and would have taken more time off for his illness if he had notice of his FLMA rights, rather than suffer at work. (*Id*.) A reasonable jury could find that Plaintiff would have taken more time off than his District-allotted sick days if he had proper notice of his ability to take FMLA leave; as such, Plaintiff has met the fifth and final element of a prima facie FMLA interference claim. *See Lupyan*, 761 F.3d at 323 (finding prejudice in situations where an employee was unable to properly structure her leave because the employer failed "to provide an employee with the opportunity to make informed decisions about her leave options"). Accordingly, the District's motion for summary judgment on this count is denied.[1]

### ii. Retaliation

Plaintiff's Complaint alleges that the District "retaliated against Plaintiff for exercising his FLMA rights by firing him for taking FMLA-protected absences." (Compl. ¶47.)

To establish a prima facie retaliation case under the FMLA, the plaintiff must prove that: (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *See Erdman*, 582 F.3d 500, 508–09 (3d. Cir. 2009) (modifying *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146).

The District's only argument for summary judgment on Plaintiff's FMLA retaliation claim is that Plaintiff did not invoke his right to FMLA-qualifying leave because he never provided notice. Like with an interference claim, in a retaliation claim "[a]n employee must provide adequate notice to his employer in order to invoke FMLA rights." *Foye v. SEPTA*, Civ. No. 15-

---

[1] To the extent that Plaintiff's opposition brief claims that the District interfered with his FMLA rights by firing him or discouraging him from taking FMLA leave, the Court declines to discuss the merits of these contentions, as the District's motion for summary judgment on the interference count is denied regardless.

1036, 2017 WL 1150259, at *17 (E.D. Pa. Mar. 28, 2017). The Court found above that a reasonable jury could determine that Plaintiff provided the District with sufficient notice to invoke his right to FMLA-qualifying leave. This finding remains the same here. As the District's sole argument for summary judgment on Plaintiff's FMLA retaliation claim is without merit, its motion on this count is denied.

## B. Plaintiff's NJLAD Claims

Defendants argue that Plaintiff has failed to make a prima facie case for any of his NJLAD claims—disability discrimination, failure to accommodate, and retaliation—and that they thus fail as a matter of law.

### i. Disability Discrimination

The NJLAD prohibits an employer from discriminating in the "terms, conditions, or privileges of employment" on the basis of a person's disability, N.J. Stat. Ann. § 10:5–12(a), "unless the handicap precludes the performance of employment," *Failla v. City of Passaic*, 146 F.3d 149, 153 (3d Cir.1998) (citing N.J. Stat. Ann. § 10:5–4.1). To state a prima facie cause of action for disability discrimination under the NJLAD, the employee must prove (1) he is disabled or perceived to be disabled within the meaning of the NJLAD; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) he was fired; and (4) the employer sought someone else to perform the same work after he left. *Muller v. Exxon Research & Eng'g Co.*, 345 N.J.Super. 595, 786 A.2d 143, 148 (N.J. Super. Ct. App. Div. 2001)) (citing *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 538 A.2d 794, 805 (N.J.1988)).

Plaintiff's Complaint alleges that the District violated the NJLAD when it "fired Plaintiff because he had a disability and/or because Defendant perceived him as having a disability."

(Compl. ¶53.) The District offers several arguments in moving for summary judgment. First, it argues that Plaintiff cannot show that he was a disabled person within the meaning of the NJLAD, and as such, it could not have discriminated against him on the basis of his disability. (Def. Mot. at 23.) Second, it argues that his job performance did not meet the District's expectations. (*Id.*) And third, it claims that it "did not hire anyone to perform the job duties of Plaintiff after he was non-renewed." (*Id.* at 25.)

### *Whether Plaintiff had a Disability for Purposes of the NJLAD*

The NJLAD's conception of disability "is very broad and does not require that a disability restrict any major life activities to any degree." *Enriquez v. West Jersey Health Sys.*, 342 N.J. Super. 501 (N.J. Super. Ct. App. Div. 2001); *see* N.J. Stat. Ann. § 10:5–5(q) (defining "disability"); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 835 (N.J. 2002) ("[NJ]LAD is not restricted to 'severe' or 'immutable' disabilities and has been interpreted as significantly broader than the analogous provisions of the Americans with Disabilities Act."). To meet the definition of a physical handicap under the NJLAD, a plaintiff "must prove that [he] is (1) suffering from physical disability, infirmity, malformation or disfigurement (2) which is caused by bodily injury, birth defect or illness including epilepsy." *Dicino v. Aetna U.S. Healthcare*, Civ. No. 01-3206, 2003 WL 21501818, at *12 (D.N.J. June 23, 2003) (citing *Viscik*, 173 N.J. at 15, 800 A.2d 826).

The District claims that "no one at the school knew plaintiff was disabled or met the criteria for having a disability," and that the District did not recognize Plaintiff as a disabled person. (Def. Mot. at 22.) Plaintiff argues in response that the District had notice of his disability because he notified several people of his pancreatitis and surgery. (Pl. Opp. At 21–22.)

The record contains sufficient evidence for a reasonable jury to conclude that Plaintiff was suffering from a disability of which the District was aware. Plaintiff's pancreatitis and ensuing

complications constitute a disability. *See Dicino*, WL 21501818 at *12 (finding that a plaintiff's "pancreatitis and accompanying back and abdominal pains" could constitute a physical disability under the NJLAD). Further, it is undisputed that Plaintiff spoke to Principal Giddins of his pancreatitis at the beginning of the school year, and that the District knew Plaintiff was having surgery during the school year. Accordingly, summary judgment is not warranted based on this argument. *See Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (D.N.J. 2015) (denying summary judgment when "a reasonable jury could find, particularly in light of New Jersey's broad interpretation of the NJLAD, that Plaintiff's condition qualifies as a disability, and that Defendant knew of her disability").

<u>*Plaintiff's Qualification to Perform the Essential Functions of His Job*</u>

The District next argues that Plaintiff fails to make a prima facie case because he cannot "demonstrate he was performing his job at a level that met his employer's legitimate expectations." (Def. Mot. at 24.) The District points to the record testimony of Principal Giddins and Supervisor Geyer, who discuss alleged flaws in Plaintiff's teaching methods. (*Id.*) Plaintiff contends that the District's only evidence of inadequate performance comes from two individuals who he alleges "displayed discriminatory animus towards [him] for the leaves of absence he took for his Medical Condition." (Pl. Opp. at 22.)

To determine whether this element of a prima facie case is met, "the law applies an objective test when evaluating the 'employers' legitimate expectations' rather than a subjective test." *Guarneri v. Buckeye Pipe Line Servs. Co.*, 205 F. Supp. 3d 606, 615 (D.N.J. 2016). "Thus, the Court limits its inquiry to objective job qualifications in evaluating the plaintiff's prima facie case, and leaves the determination of whether an employee possesses a subjective quality, such as leadership or management skills, to a later stage." *Id.*

The District's argument on this element fails. Whether Plaintiff met the District's "legitimate expectations" was decided by his year-end summative evaluation, the score for which was determined by Principal Giddins' and Supervisor Geyer's observations. While the summative evaluation provides a rubric showing how the total score was arrived at, it is nonetheless a "subjective test," as it is based on personal viewpoint rather than measurable, objective criteria. In fact, the only truly "objective" criteria in the evaluation is the "student growth objective" that shows the percentage of students meeting the goals set – here, Plaintiff received a 4/4 score. (Doc. 19-19.) The remainder of the evaluation is based on subjective qualities, evaluations of which the Third Circuit have noted are "more susceptible of abuse and more likely to mask pretext." *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 798–799 (3d Cir. 1990) (stating, "to deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he has failed to introduce evidence showing he possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext").

### *Whether the District sought someone to perform Plaintiff's job duties*

Finally, the District argues that Plaintiff fails to meet the last element of a prima facie case, because he cannot show that it hired "anyone to perform the job duties of Plaintiff after he was non-renewed." (Def. Mot. at 25.) Plaintiff argues in response that, while no new individual was hired to replace him, other members of the English Department were nonetheless used to "complete Plaintiff's teaching tasks." (Pl. Opp. at 23.)

Here, as the District states, "it is uncontroverted that no one was hired to take Plaintiff's position and the English Department for the District operated with one less teacher the next school year." (Def. Reply at 8.) However, Plaintiff's prima facie case is not defeated simply because the District did not hire a new worker. In *Ferren v. Foulke Mgmt. Corp.*, Civ. No. 15-3721, 2017 WL

634511 (D.N.J. Feb. 16, 2017), the court found that although a plaintiff claiming NJLAD disability discrimination was not replaced with a new employee after being terminated, he had "carried his burden at summary judgment" by showing that a previously existing employee had taken on the plaintiff's work after his termination. *See also Taha v. TBC Corp.*, Civ. No. 14-3377, 2016 WL 1644330, at *5 (D.N.J. Apr. 26, 2016) (finding that, "[a]s all discrimination claims are highly fact intensive," showing that a defendant hired a new individual as a replacement "is not the only manner in which a plaintiff might demonstrate an inference of discrimination")*; Glenn v. Lawrence Twp. Police Dep't,* Civ. No. 10-3121, 2012 WL 933335, at *5 (D.N.J. Mar. 20, 2012) (stating, "we consider it unwise to require a plaintiff to establish unfailingly as part of the prima facie case that plaintiff was replaced by an individual outside the plaintiff's protected class" (citing *Williams v. Pemberton Twp. Pub. Sch.*, 323 N.J. Super. 490, 733 A.2d 571, 578 (N.J. Super. Ct. App. Div. 1999)).

Accordingly, the Court declines to grant summary judgment on the basis that Plaintiff has not made out a prima facie case of NJLAD disability discrimination; the District's motion on this claim is denied.

    ii.    **Failure to Accommodate**

The NJLAD requires employers to "reasonably accommodate an employee's disability, and the related limitations of an employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *Hennessey v. Winslow Twp.*, 368 N.J. Super. 443, 452, 847 A.2d 1, 6 (App. Div. 2004), aff'd, 183 N.J. 593, 875 A.2d 240 (2005). To prevail on a claim for failure to accommodate under the NJLAD, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have

been reasonably accommodated." *McQuillan v. Petco Animal Supplies Stores, Inc.,* Civ. No. 13–5773, 2014 WL 1669962, at *6 (D.N.J. Apr.28, 2014).

Plaintiff's Complaint states that he "requested a reasonable accommodation for his Disability in that he sought periodic leave related to same," but "Defendant failed to engage in the interactive process to determine what accommodation it could offer to Plaintiff." (Compl. ¶¶56–57.) The District argues that Plaintiff never made it aware that he had a disability, "never made a request for an accommodation, and never displayed any signs a reasonable accommodation was even necessary." (Def. Mot. at 26.) Plaintiff argues in response that his notice of request for FMLA leave also constituted a request for accommodation under the NJLAD. (Pl. Opp. at 24.) He claims that, upon notice, the District should have engaged in the interactive process, yet failed to do so. (*Id.*)

As stated earlier, a reasonable jury could find that the District knew of Plaintiff's disability; thus, the first element is met. The second element—whether Plaintiff requested an accommodation—is the only other factor the parties dispute here.

In seeking accommodation, "New Jersey law places the duty on the employee to initiate a request for an accommodation. Although there is no specific formula and the request need not formally invoke the magic words 'reasonable accommodation,' the plaintiff must nonetheless make clear that the employee wants assistance for his or her disability." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 238 (D.N.J. 2015). While a request for a reasonable accommodation need not "be in writing or even use the phrase 'reasonable accommodation,'" the employee "must make clear that. . . assistance [is desired] for his or her disability." *Id.* (quoting *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3d Cir. 2000)). "Once such a request is made, both parties have

a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *McQuillan*, 2014 WL 1669962 at 6.

Plaintiff attempts to rely on *Dinardo v. Medco Health Sols., Inc.*, Civ. No. 14-5716, 2016 WL 2994092 (D.N.J. May 24, 2016) in arguing that "a request for leave of absence under the FMLA sufficiently constitutes a request for accommodation under the NJLAD." (Pl. Opp. at 24.) However, *Dinardo* differs from the present case: there, the plaintiff took leaves of absence "in excess" of what his employer's leave policies permitted and provided "doctor's notes related to his subsequent absences." *Id.* at *5. The *Dinardo* court held that a reasonable jury could find that the excessive leaves and presentation of doctor's notes were a "clear request for an accommodation," and the employer's failure to communicate with the plaintiff about whether he was making a request before terminating him "was a bad faith response." *Id.*

Further, Plaintiff's argument that a request for leave under the FMLA automatically constitutes a request for accommodation is misguided. In *Fitzgerald v. Shore Memorial Hospital*, 92 F.Supp.3d 312 (D.N.J. 2015), the court denied the defendant's motion for summary judgment as to the plaintiff's FMLA interference claim, finding that an issue of fact existed as to whether the plaintiff gave notice sufficient for FMLA purposes. However, the Court simultaneously granted summary judgment for the defendant on the plaintiff's NJLAD accommodation claim, finding that the plaintiff did not actually request an accommodation. *Id.* at 239. Similarly here, while Plaintiff may have given the minimal notice required for FMLA purposes, the record does not support his contention that he requested an accommodation under the NJLAD.

In *Linton v. L'Oreal USA*, Civ. No. 06-5080, 2009 WL 838766 (D.N.J. Mar. 27, 2009), a plaintiff provided his employer with doctor's notes in seeking to "extend his medical leave accommodation." The Court found that simply providing the doctor's notes was not enough; he

needed to actually make some kind of request. *See Linton*, 2009 WL 838766 at *4 ("Under Plaintiff's theory, every employer with knowledge that an employee was out with an injury such as a sprained ankle, would be forced to engage in the interactive process even in the absence of a clear request for assistance, or possibly even any request at all.") As the *Linton* court stated, "[s]omething more is required of an employee under the NJLAD than merely apprising her employer that she is still injured to start the interactive process for seeking an accommodation; the employee must at least arguably seek assistance to survive summary judgment." *Id*. at 6.

Here, although the District was aware that Plaintiff had pancreatitis and that he underwent surgery at a later point in the school year, there is no support for Plaintiff's contention that he actually requested accommodation. Plaintiff did not provide doctor's notes or take leave in excess of what he was provided by the District. Plaintiff's absences were all covered by his provided sick days. Accordingly, Defendant's motion for summary judgment as to this count is granted.

### iii. Retaliation

To establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that: (1) he was in a protected class; (2) he was engaged in protected activity known to the employer; (3) he was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence. *Victor v. State of New Jersey*, 4 A.3d 126, 141 (N.J.2010).

Plaintiff's Complaint states that he "requested reasonable accommodations to treat his Medical Condition," which is "clearly a protected activity under the NJLAD," and that the District "fired Plaintiff, in part, because he requested the aforementioned accommodation." Plaintiff is correct in his assertion that a request for a reasonable accommodation is a protected activity under the NJLAD. However, the Court has found Plaintiff has failed to show that he requested an

accommodation. As such, this claim must also fail, because Plaintiff cannot show that he engaged in protected activity, or that the District was aware he engaged in protected activity. *See Fitzgerald*, 92 F.Supp.3d at 239 (finding that the plaintiff's NJLAD retaliation claim, which was based on the defendant's failure to accommodate, failed because the plaintiff could not actually show failure to accommodate). Accordingly, summary judgment is granted for the District on this claim.

### C. Punitive Damages

Finally, the District moves to strike Plaintiff's request for punitive damages. (Def. Mot. at 27.) The NJLAD permits recovery of punitive damages in cases where two elements are met: "the offending conduct must be especially egregious; and there must be actual participation in or willful indifference to the wrongful conduct on the part of upper management."*Kancherla v. Lincoln Tech. Inst., Inc.*, Civ. No. 14-7784, 2018 WL 922126, at *18 (D.N.J. Feb. 15, 2018) (internal quotations omitted).

Whether punitive damages should be awarded is "a fact question which should be decided by a jury." *Kancherla*, 2018 WL 922126 (denying a motion to strike punitive damages on an NJLAD claim, stating that the "fact-sensitive issue" of punitive damages "is not suitable for resolution on summary judgment"); *see also Rojas v. Acuity Brands Lighting, Inc.*, Civ. No. 12-2220, 2014 WL 2926510, at *16 (D.N.J. June 27, 2014) (denying the defendant's request to strike punitive damages on summary judgment after emphasizing "the fact-sensitive nature of the determination whether punitive damages were warranted").

Here, Plaintiff's claim for disability discrimination under the NJLAD survives summary judgment; as such, his demand for punitive damages under the NJLAD survives as well. The District's motion to strike punitive damages is denied.

## IV.    CONCLUSION

For the foregoing reasons, the District's motion for summary judgment is **DENIED** as to Plaintiff's FMLA claims (Counts I and II) and his NJLAD disability discrimination claim (Count III), as well as to Plaintiff's demand for punitive damages on his NJLAD claim. The District's motion for summary judgment is **GRANTED** as to Plaintiff's NJLAD claims for failure to accommodate and retaliation (Counts IV and V). An accompanying Order shall issue.


Dated: _____11/15/2019_____                              /s Robert B. Kugler_____
                                                            ROBERT B. KUGLER
                                                            United States District Judge